MONROE, J.
Plaintiff alleges, in substance, that in the spring of 1906 he made *897 a verbal contract with defendant whereby the latter agreed to furnish the water needed. to irrigate his rice crop, and upon the faith of which he planted his rice; that thereafter the contract was reduced to writing, at a time (May 24th) when defendant was actually furnishing water for a portion of the crop and when the whole crop was suffering for lack of water, as defendant well knew; that on June 12th he put defendant in default, by a demand, made in the presence of two witnesses: and that he thereafter made repeated demands for water, with which defendant, through its agent, acknowledged its inability to comply; that his land was well prepared, planted, and fertilized; that'he would have made a crop, consisting of rice of different qualities and value (the details of which are set forth), but for the failure of defendant to comply with its contract; and that, by reason of such failure, he has sustained a loss of $10,492.88, for which he prays judgment. The written contract, annexed to the petition, reads, in part, as follows:
“Said lessor [the company] * * * agrees * * * to maintain a pumping plant and irrigation canals, as now located, in Calcasieu parish, * * * during the year 1906, and to use all reasonable means to supply * * * an amount of water, which, with the natural rainfall, will be sufficient to properly irrigate the lands described in this contract; but it is not to be held liable for any deficiency in the supply of water at English Bayou, nor for any loss or damage arising therefrom that may be caused by accidents to machinery, injuries to canal, or other failures or accidents over which it has no control, but it shall only be bound to make all repairs necessary with reasonable despatch. * * * The lessor shall be entitled to a written notice of not less than ten days before water will be required on the premises, such notice to be given to C. F. Spalding, * * * and shall state, as nearly as may be, the number of acres to be irrigated at that time, no land to be irrigated before June 1, 1906, nor later than September 1, 06. It is further agreed * * * that the said lessor is not to irrigate every part of the within described land at once, but to proceed with the flooding as rapidly as possible. * * * The said lessee [plaintiff] will construct, maintain, carefully watch, and keep in the best repair and' condition such levees, lead ditches, and drains as are necessary for the safe and economical cultivation of rice on the land described herein, and will levee out the land planted in rice in such a manner that each levee will back water against the next levee, but not to exceed eight inches in depth in any part of the field; will build levees sufficiently strong to hold water on the crop without waste by leakage or running over the tops of the levees; will cause a careful and competent levee tender to pass over each and every levee at least once in every 24 hours, during flooding season; * * * that in case said lessee does fail to maintain any or all levees as herein stipulated, said lessor shall have the option to procure necessary labor, teams, and machinery to perform the work necessary to put the levees in condition described above and charge the expense to said lessee, which charges shall not exceed. * * * Said lessee agrees * * * not to allow * * * water to be wasted or used recklessly or unnecessarily. «= « * ii is ajs0 agreed * * * that * * * the levees are to be so located by said lessee that a depth of not over eight inches of water shall be required; * * * that no land will be watered that is not planted in rice; that no water will be furnished * * * when the land to be irrigated has water within three inches of the top of the levee at any point; and the said lessor has the right to withhold water from any land mentioned, where, in the lessor’s opinion, there is not sufficient stand to warrant a crop or the levees are not sufficient to flood or hold1 water on the land without leakage or waste. The manner of distributing water to the land of said lessee is to rest entirely with the lessor or its agents, who are to determine the most efficient and economical distribution thereof; and it is well understood and agreed by the said lessor and the said lessee that the lessor or its agents shall have absolute and entire control of the water supply, and are to be the sole judges as. to when and how much of the same shall be furnished. * * * It is further agreed that the lessor will not furnish water to irrigate rice planted later than June 1, 1906.”
Defendant predicated an exception of “no cause of action” on the proposition that, because the contract stipulates that “the manner of distributing water * * * is to rest entirely with the lessor or its agents, who are to determine the most efficient and economical distribution thereof,” and further stipulates that “the lessor or its agents shall have absolute and entire control of the water supply, and are to be the sole judges as to when and how much of the same shall be furnished,” the plaintiff is absolutely debarred “from bringing any ac *899 tion, under said contract, for an alleged insufficient supply of water.”
We do not so understand the matter. To the contrary, according to our interpretation of the contract, the control vested in the lessor is accompanied by a corresponding measure of liability, and is exercised at the lessor’s peril. Hence the allegations that the lessor, having control of the water, failed to furnish it, on proper demand, and that plaintiff thereby lost his crop, discloses a legal cause of action, which, if sustained by proof, would entitle plaintiff to recover, unless defendant could show that such failure was caused by “deficiency in supply of water at English Bayou, * * * accidents to machinery, injuries to canal, or other failure or accidents over which it has no control.”
By way of answer, defendant denies that it was ever put in default, in accordance with the. contract or the law, or that it ever acknowledged its inability to comply with plaintiff’s alleged demands for water. Upon the other hand, it alleges that, if there was any insufficiency in the water supply, it was caused by unavoidable accident to its machinery or injuries to its canal. Upon the trial, the court made the following ruling:
“By the Court: The court rules in this case that the plaintiff is bound by his pleadings and his contract: The contract having stipulated that, before he could require the defendant company to furnish water, he must give a written notice to defendant company, at least 10 days before the water is wanted, and the plaintiff’s petition failing to allege that .he ever made such a demand, in writing, the court holds that he cannot, now, show a putting in mora for the purpose of recovering damages, but will be permitted to show, as alleged in his petition, that, upon subsequent and repeated demands, as alleged in his petition, the defendant acknowledged its inability to furnish water.”
Under this ruling, the parties were confined, primarily, to the question whether defendant acknowledged its inability to supply the water demanded, and, the court having found that such acknowledgment was not established by the proof, the trial proceeded no further, and the suit was dismissed,, whereupon, plaintiff appealed.
We find no error in the ruling complained!' of. The contract plainly entitled defendant to' the notice, in writing, as a condition precedent to its subsequent default and liability, and-it is not alleged or pretended that such notice was given. Defendant could not therefore have been put in default. Nor, do we-find that there was any such acknowledgment of inability, on defendant’s part, to-comply with its obligation to furnish water, as to have dispensed with the notice; the-testimony on that subject being inconclusive.
The judgment appealed from is, accordingly, affirmed.